THE MAYOR AND COUNCIL OF WILMINGTON, Defendant below, Plaintiff in Error, *vs.* JOSEPH W. VANDEGRIFT, Plaintiff below, Defendant in Error.

WRIT OF ERROR OF THE SUPERIOR COURT OF NEW CASTLE CO.

**Municipal Court. Jurisdiction. Nuisance.**—The municipal court of the city of Wilmington has jurisdiction of public nuisances.

**Same.**—Coasting or sledding on the public street of a city in such a manner as to endanger the safety of persons walking lawfully thereon, is a public nuisance indictable at common law, and unlawful independently of any city ordinance, and within the jurisdiction of the municipal court.

**Municipal Corporation. Ordinances unnecessary, when.**—In a municipal corporation it is not necessary to define and forbid acts which are offenses at common law, and therefore the failure to legislate on such subjects is not a neglect of duty in that respect.

**Same.**—The duty of the police officers of a city to prevent the commission of crimes is a public duty, as distinguished from a strictly corporate duty, and for failure in the performance of the former the municipality is not liable.

**Municipal Corporation. Demurrer. Statutes. Ordinances.**—In an action against a municipal corporation to recover damages for injuries received while walking along a street by reason of the alleged wilful negligence of the city in permitting obstructions amounting to a nuisance, notwithstanding the allegation of actionable neligence and the admission made by the demurrer, the municipal charter and ordinances enacted in pursuance thereof are as much the subjects of legitimate inquiry as if literally incorporated in the proceedings.

**Same.**—The averment that the accident complained of was the result of a wilful disregard of a corporate duty is more in the nature of a conclusion of law than a bare statement of fact; and consequently a demurrant is concluded by the admission made by the demurrer, only so far as such averment is sustained or supported by the law of its being, and the principles which underlie the duties and liabilities of municipal corporations.

This was an action on the case against the city of Wilmington for injuries received by the plaintiff below while walking on the streets of the city. The cause of the injury, as alleged in the declaration, was that the street was obstructed and made dangerous by coasting and sledding which was permitted by the city, and the neglect of corporate duty to keep the streets unobstructed and free from danger to persons lawfully passing thereon. The declaration contained several counts, and the defendant demurred generally and specially, different causes of demurrer being alleged as to different counts of the declaration.

As appears by the opinion of the Court, in which the facts are stated with sufficient detail, the particular causes of demurrer to separate counts became immaterial in the view taken of the case by the Court. At the May term, 1892, demurrers were argued and at the November term, 1892, they were overruled and judgment was entered for the plaintiff below, whereupon the defendant below removed the case into this court by a writ of error.

At the January term, 1893, the case was heard before Wol-cott, Ch., and Houston and Grubb, JJ.

*Charles M. Curtis*, City Solicitor, for plaintiff in error.    The use of the public roads and streets by persons coasting in such manner as to make the highway unsafe for travellers, as alleged in the plaintiff's declaration, constitutes a nuisance; Wood, Nuisances §251; *Faulkner vs. Aurora*, 85 Ind. 130; *Shultz vs. Milwaukee*, 49 Wis. 254.

To commit such a nuisance in the public highway is unlawful both at common law and by the laws of Delaware.    "If any person shall encroach upon, obstruct or commit any nuisance in a public road, * * * * * * he shall be deemed guilty of a misdemeanor."    Rev. Code, ch. 60, §31.    The duty of prevention of the nuisance alleged is a public governmental and police duty, just as is the duty to prevent breaches of the peace and to enforce other general laws.    The only appropriate method is arrest of the offenders and the only appropriate machinery for this are the police agents of the State, constables and policemen.    Therefore the neglected duty of the defendant city in this case was a general duty imposed by a general law of the State and is imposed upon it as a public instrumentality of the State, as the agent of the sovereignty of the State.    *City of Galveston vs. Pasnainsky*, 62 Tex. 18, *per* Stayten, J.; s. c. 13 A. & E. Corp. Cas. 484, 493; *Hill vs. Boston*, 122 Mass. 344, *per* Gray, J.

A municipal corporation is not liable for injuries to persons, while on the highways, which do not result from a defect in the construction of the street or failure to maintain the street in a safe condition as a street, and is not liable for injuries to travellers done by an unlawful use of the highway by persons not the officers or agents of the corporation, and which use was not authorized or licensed by the corporation or the source of profit to it.    The well settled distinction is between the construction and maintenance of streets as natural objects and the regulation and control of the use of the streets by animate objects; *Barber vs. Rosbury*, 11 Allen 318; *Lafayette vs. Timberlake*, 88 Ind. 330; *Vinal vs. Dorchester*, 17 Gray 421.

The manner in which a highway is used by the public is a different thing from its quality and condition as a street. To construct and maintain streets in a safe condition for travel is a corporate duty, but to regulate the use of the streets by the public in passing in and along the same is a public or governmental duty. For failure to perform the former duty the corporation is liable, but it is clearly not liable for failure to perform the latter; *Barber vs. Roxbury,* 11 Allen 318; *City of Lafayette vs. Timberlake,* 88 Ind. 332; *Vinal vs. Dorchester,* 7 Gray 421.

A clear example of the application of the rule appears from the following cases where persons were injured while lawfully in the highway by persons firing cannons in the highway; *Norristown vs. Fitzpatrick,* 94 Pa. 121; *Robinson vs. Greenville,* 42 Ohio St. 625; *Campbell vs. City of Montgomery,* 53 Ala. 527.

Another illustration of the rule is the case of persons injured while in the public streets by fireworks discharged by persons in the public streets or squares, and the following cases establish that the municipal corporations are not liable for such injuries; *Ball vs. Woodbine,* 61 Ia. 83; *Hill vs. City of Charlotte,* 72 N. C. 55; *Speirs vs. Brooklyn,* 19 N. Y. S. 665; affirmed, 139 N. Y. 6; Jones, Negligence, 63 note.

Municipal corporations are under no common law liability to pay for property of individuals destroyed by mobs or riotous or disorderly assemblages; 2 Dillon, Mun. Corp. Sec. 959; *Western College vs. Cleveland,* 12 Ohio 375. A municipal corporation is not liable in an action for damages for injuries to a traveller on the streets of the city caused by his having been struck by a person coasting, sledding or sliding on said street, even though such use rendered the streets unsafe and dangerous, and though the municipal authorities had notice of such use and neglected to stop it; Cooley, Const. Lim. Sec. 208, note 1; Elliott, Roads and Streets, 465; *Shultz vs. Milwaukee,* 49 Wis. 254; *Lafayette vs. Timberlake,* 88 Ind. 330; *Faulkner vs. Aurora,* 85 Ind. 130; *Hutchinson vs. Concord,* 41 Vt. 271; *Ray vs. Manchester,* 46 N. H. 59; *Burford vs. Grand Rapids,*

Argument.

53 Mich. 98 ; *Shepherd vs. Chelsea*, 4 Allen 143 ; *Pierce vs. New Bedford*, 129 Mass. 534 ; *Ball vs. Woodbine*, 61 Ia. 83 ; *Mayor and City of Baltimore vs. Poultney*, 25 Md. 107.

Cities are not liable for the failure of its officers to perform police duties or for the manner of the performance of such duties ; *Western College vs. Cleveland*, 12 Ohio St. 375 ; *Hart vs. Bridgeport*, 13 Blatchf. C. C. 289 ; *Robinson vs. Greenville*, 42 Ohio 625 ; *Norristown vs. Fitzpatrick*, 94 Pa. 121 ; *Lincoln vs. Boston*, 148 Mass. 578; *Faulkner vs. Aurora*, 35 Ind. 130 ; *Lafayette vs. Timberlake*, 88 Ind. 330 ; *Board of Trustees of Odella Schroeder*, 58 Ill. 353 ; *Mitchell vs. Rockland*, 52 Me. 118 ; *Grant vs. Erie*, 69 Pa. 420.

The defendant is not liable for failure to pass an ordinance prohibiting coasting on the public streets, assuming there was no such ordinance, which is not admitted to be true.    Whether an ordinance relating to any subject matter shall be passed or not by the legislative body of a city is always discretionary, and for failure to discharge discretionary duties a municipal corporation is not liable; *Cooley, Const. Lim.* § 208 ; *Elliott, Roads and Streets*, 465 ; *Dillon, Mun. Corp.*, § 208 ; *Tindley vs. City of Salem*, 137 Mass. 171 ; *Robinson vs. Greenville*, 42 Ohio 625 ; *Rivers vs. Augusta*, 65 Ga. 376 ; *Faulkner vs. Aurora*, 85 Ind. 130, 134 ; *Lafayette vs. Timberlake*, 88 Ind. 330 ; *Hutchinson vs. Concord*, 41 Vt. 271 ; *Burford vs. Grand Rapids*, 53 Mich. 98 ; *McDade vs. Chester*, 117 Pa. 414 ; *Kelly vs. Milwaukee*, 18 Wis. 89.

*John Biggs*, for the defendant in error.    The act of assembly providing for the punishment of persons committing nuisance in a public road, Revised Code, ch. 60, § 31, does not cover the offense of coasting or sledding, and it was never considered as applying to the streets of Wilmington, over which the municipal corporation by its charter has exclusive control.    It is therefore clear that there is no law or ordinance against coasting or sledding upon the public streets of the city of Wilmington.

Coasting or sledding in a public street is not necessarily a nui-

sance, but as alleged in this case it was a nuisance and a very dangerous one, and it was the duty of the municipality when the knowledge that the practice was carried on was brought home to it, to declare it to be a nuisance by ordinance and to take steps to abate it; *Wood, Nuisances*, §§ 250, 251, 269.

The acceptance of its charter by the defendant was upon an implied condition that it would not suffer or permit such a nuisance to exist, and imposed upon it the obligation to abate it; *id.* 743–4; *Taylor vs. Cumberland*, 64 Md. 68; *Mayor vs. Maryott*, 9 Md. 160; *Parker vs. Macon*, 39 Ga. 725; *New York vs. Furze*, 3 Hill 614; *Riddle vs. Proprietors of Locks, etc.*, 7 Mass. 187; *Grove vs. City of Fort Wayne*, 45 Ind. 429; *Pittsburg vs. Grier*, 22 Pa. St. 54; *People vs. Albany*, 11 Wend. 543; *Martin vs. Mayor of Brooklyn*, 1 Hill 545; *Kelsey vs. Glover*, 15 Vt. 715; *Chamberlaine vs. Enfield*, 43 N. H. 356; *Raymond vs. Lowell*, 6 Cush. 529; *Robinson vs. Mayor, etc., of Wilmington*, 8 Houst. 409.

The same authorities support the proposition that the nuisance would have been abated had the defendant below exercised its authority and declared by ordinance (after the knowledge of the existence of the nuisance had been brought home to it) that the coasting or sledding as set forth in the declaration was a nuisance, and provided for the punishment of those who engaged in it, and it owed to the defendant in error the duty to do so.

If the sidewalk and street crossing were in such a dangerous condition, because of the snow and ice thereon, as to deter an ordinarily prudent man from using them, then the plaintiff had the right to walk in the street, and it was his duty to do so; *2 Dillon Mun. Corp.*, § 1008; *O'Laughlin vs. Dubuque*, 42 Ia. 539; *Scranton vs. Hill*, 102 Pa. 378; *Zettler vs. Atlanta*, 66 Ga. 195; *Alline vs. LeMars*, 71 Ia. 654; *State vs. Talley*, 9 Houst. 417.

WOLCOTT, CHANCELLOR, delivered the opinion of the Court.

This was an action on the case, instituted in the court below against the Mayor and Council of Wilmington (a corporation ex-

isting under the laws of the State of Delaware) by Joseph W. Vandegrift, to recover damages for injuries received while walking along French street, in the city of Wilmington, at or near its intersection with Seventh street. It is alleged in the declaration that the plaintiff in error wilfully and negligently suffered boys and other persons to frequently use said Seventh street for the purpose of sledding and coasting thereon in an unlawful and improper manner, and that, by reason of such allowance of such unlawful use of said Seventh street, the defendant in error, while lawfully walking along French street, at or near its intersection with said Seventh street, was run into and knocked down by a sled propelled by the weight of one Joseph McHugh and thereby seriously injured. Wherefore he claimed large damages. To the declaration the plaintiff in error demurred generally, and, in accordance with act of the assembly in that behalf, specified divers causes of demurrer to the said declaration and the several counts thereof. The Court overruled the demurrer and rendered judgment in favor of the defendant in error. Thereupon the plaintiff in error brought the case to this court to be reviewed on writ of error. The judgment was assigned as error.

For the purposes of this case it is unnecessary to notice separately the several counts in which the cause of action is variously described. It is sufficient to state that the declaration contains a circumstantial statement of the injuries complained of and a distinct averment that they were the result of the wilfull negligence of the plaintiff in error. The demurrer admits all the facts set forth in the declaration that are properly pleaded to be true. The only question, therefore, with which this Court can deal, is whether those facts, in law, constitute a sufficient ground of action. To determine this question it, is necessary to ascertain what the duties and powers of the plaintiff in error were in respect to the prevention and suppression of the practice of coasting on the streets of Wilmington, or such other unlawful use thereof as would interfere with or render unsafe public travel. This will necessarily involve

the duty of making a critical examination of those provisions of the city charter relating to that subject and the regulations established by the city authorities in that behalf. While this court, sitting as a court of errors, cannot go outside of the record for any facts upon which to rest its judgment, yet we think notwithstanding the allegation of actionable negligence and the admission made by the demurrer, that the act of assembly from which the plaintiff in error derives its existence, and the ordinances enacted in pursuance thereof, are as much the subjects of legitimate inquiry as if they were literally incorporated in the pleadings before us. The averment that the accident complained of was the result of a wilful disregard of a corporate duty was more in the nature of a conclusion of law than a bare statement of fact; and consequently the demurrant is concluded by the admission made by the demurrer, only so far as such averment is sustained or supported by the law of its being, and the principles which underlie the duties and liabilities of municipal corporations. To decide the question presented by the record in this case independently of the charter of the municipality of Wilmington and the ordinances, would limit the scope of our inquiry to the consideration merely of the regularity of the pleadings, and thus leave untouched the real essence of the controversy and subject the parties to the necessity of pursuing their rights in the court below according to the course of law in that jurisdiction prescribed. While general principles are always of great assistance in determining the liabilities of a municipal corporation in civil actions for private injuries, yet the terms employed by the Legislature to convey or impart its powers are of first importance in ascertaining its duties and corresponding liabilities.

The counsel for the defendant in error assumed in his argument that the practice of coasting on Seventh street, as alleged in the declaration, was a public nuisance and contended with much force that the plaintiff in error was liable for the damages thereby sustained by his client, because no steps were taken by it, through

the agency of the street and sewer department pursuant to the authority given to define and remove nuisances in Section 31 of its charter, to declare such practice to be a nuisance and prohibit the continuance thereof, after its dangerous character had been brought to its knowledge. Now, let us see whether this contention is met or satisfied by any of the privisions of said charter. By Section 14 of the charter a municipal court is created, and by Section 15 its jurisdiction is limited and defined. By the latter section it is given "sole and exclusive jurisdiction to inquire of, hear, try and finally determine all those criminal matters and offences enumerated in the fifteenth section of the sixth article of the amended constitution and committed within said city and to punish all persons convicted of said offences or any of them agreeably to the laws of this State." The fifteenth section of the sixth article of the constitution, referred to confers upon the general assembly of this State power to establish inferior courts and clothe them with jurisdiction of certain criminal matters, and among them are enumerated nuisances. It is, therefore, clear that the Municipal Court of the city of Wilmington had jurisdiction of public nuisances as it is an inferior court established by the General Assembly of this State pursuant to the section and article of the constitution before referred to. Was the practice of coasting, as set forth in the declaration, such a nuisance as was contemplated by the framers of the constitution? We have no doubt that it was, for it answers to and contains all the elements necessary to constitute a nuisance indictable at common law, and punishable under the laws of this State. A learned writer on the subject defines a common or public nuisance " to be an unlawful act or omissson to discharge a legal duty, which act or omission endangers the lives, safety, health or comfort of the public, or by which the public are obstructed in the exercise or enjoyment of a right common to all." Seventh street is a well-known public highway in the city of Wilmington, and for purposes of travel the people had a right to the free and uninterrupted use thereof. The occupation of said street by persons indulging in the

sport of coasting, as described in the declaration, was unlawful, independently of any ordinance, and certainly endangered the lives and safety of the people and constituted a serious obstruction of the public in the exercise or enjoyment of a common right. It was therefore a common nuisance and clearly within the definition quoted. The Municipal Court, it will be observed, is clothed with full power to punish persons convicted of such an offence, agreeably to the laws of this State. What is that punishment? The eighteenth section of Chapter 127 of the Revised Code provides that "assaults, batteries, nuisances and all other offences indictable at common law and not specially provided for by statute, shall be deemed misdemeanors and shall be punishable by fine and imprisonment, or either, according to the discretion of the Court." Now, since the Municipal Court of Wilmington has complete jurisdiction of all nuisances indictable at common law, committed within its limits, with full power to inflict severe punishments upon offenders, what more effectual mode could have been devised than has been done for the prevention and suppression of the practice of coasting as alleged in the declaration? Clearly none. The passing of an ordinance by the street and sewer department imposing a fine upon any person who might be engaged in such sport would have been an idle exercise of its legislative functions and would have fallen far short of the end intended to have been accomplished thereby.

It is claimed, however, that the jurisdiction of the municipal court over nuisances could not be legally invoked, because no ordinance was ever passed, expressly defining this particular sport or practice to be a nuisance. But does its jurisdiction in respect to nuisances remain dormant or inactive until the acts and conditions that constitute nuisances are defined by ordinances to be such? Surely not, for the bare statement of such a proposition, in view of the express language or terms in which such jurisdiction is conferred, demonstrates its utter fallacy. Such jurisdiction was given without reservation or condition, and its utility or efficiency was

not made to depend upon the contingency of the passing or not passing of ordinances defining such offenses to be nuisances. With the same propriety it might be contended that the Court of General Sessions, sitting in either county of this State, could not exercise jurisdiction of nuisances committed without the city of Wilmington until the legislature had first declared by statute what the essentials of a common nuisance are. While it is true that the legislature may declare what a nuisance is, in the absence of such a declaration the Court would be compelled to take cognizance of such matters, and conduct the same to a final hearing and determination. So the Municipal Court of Wilmington, notwithstanding the authority vested in the legislative body of the city to define nuisances, cannot, because of the omission to exercise such authority, legally refuse to assert its jurisdiction of the same, when formally and properly invoked. Of what practical use could the passage of such an ordinance be? For no definition of a nuisance, which inclued coasting on the streets of Wilmington, could be formulated by the wit of a man that could make it any more or less a nuisance than it was. It was intrinsically a common nuisance, the definition whereof is too well-known, and its ingredients and characteristics too well understood, to require even the sanction of the legislature of the State, much less the legislative body of any municipality therein, to make it more definite, or to impart more certainty to its signification than it already possesses. Another prevailing reason why the definition of a public nuisance by ordinance is not made a condition precedent to the exercise of jurisdiction of the same by the Municipal Court is that it would tend rather to confusion than to simplicity in the trial and conviction of persons charged with the commission of such an offense. It is not probable that the legislative body of Wilmington could by ordinance improve on the common-law definition of a nuisance, embracing notorious obstructions of a public highway, which has for so long a time stood the test of the most severe judicial scrutiny and examination. There being then no necessity for such an ordinance (conceding for the

moment that none was ever passed), no duty in respect thereto ever
arose ; and, there being no duty, there was no liability.   It borders
on the absurd to suppose that the legislature intended by the incor-
poration of the city of Wilmington to impose any such unnecessary
and superfluous duty on the legislative branch of its government.

In this connection, it may be asked, why was the authority
given to " the council " now the " street and sewer department " to
define nuisances as provided in Section 31 of the city charter?   At
first blush, it may appear to be inconsistent with the construction
given to Section 15 as to the powers and jurisdiction of the
Municipal Court ; but, upon a close examination of both sections
together, this apparent inconsistency wholly disappears, for this
authority may be construed to have effect without interfering or
clashing with the jurisdiction of the Municipal Court, as provided
in the first branch of the jurisdiction clause of said Section 15.   It
may well have been given to declare such acts, conditions, and ob-
jects to be nuisances that are not clearly within the legal notion of
a public nuisance at common law.   How far such authority ex-
tends is a question we shall not stop to consider, as it is unnecessary
for the purposes of this decision.   It is certain, however, that a
nuisance such as that described in the declaration was not intended
to be brought within the general authority to define nuisances, for
it is an offense against the State, the measure of whose punishment
is fixed by a general law of the State ; and any definition thereof,
if contrary to the legal and well-settled definition of a common
nuisance, would be void, and any definition merely declaratory of
the same would simply be useless.

Having arrived at the conclusion that no municipal liability
attached to a failure of the legislative body of the city to pass an
ordinance defining coasting on its streets, as alleged in the declara-
tion, it only remains now for the Court to consider whether the
neglect of the city constables to suppress such sport, upon the prin-
ciple of *respondeat superior*, made the city liable to the defendant
in error for the injuries received at the time designated in the dec-

laration. The decision of this question depends upon the solution of a preliminary question, which is whether such officers were, in respect to such a police duty, the agents or servants of the State, or of the city in its corporate capacity. If the agents or servants of the former, clearly the city is not liable. It is sometimes quite difficult to draw the line of distinction between strictly corporate duties and public duties, as to the police officers of a municipality, but in this case the distinction is so well marked that we are not embarrassed with any perplexing question of that sort. By Section 15 of the city charter the Legislature conferred upon the Municipal Court sole and exclusive jurisdiction of the entire group of offenses (including nuisances) enumerated in the fifteenth section of the sixth article of the Constitution, with power to hear, try, and finally determine the same under the laws of the State of Delaware. It frequently occurs that the State, in the distribution of its powers, for the sake of convenience and expediency, confides to certain local governments, within well-defined territorial limits, the power to administer criminal justice therein. But, because such authority is limited to a certain locality or district, it does not make the duties which the possession of such power imposes, nor the agents charged with the performance thereof, any more or less public in their character. The preservation of the peace is one of the most important functions of state governments, and it makes no difference to what tribunal that duty or power is intrusted. It is still essentially a matter of public concern, and does not lose its public character. To commit any of the offenses within the city of Wilmington, of which the Municipal Court thereof is given sole and exclusive jurisdiction, would be an infraction of the laws of the State, and therefore against its peace and dignity, and punishable by said Court, as it would be in the State Court having general jurisdiction of the same according to the general provisions of law in that behalf. Assaults and batteries are included in the same category as nuisances. Now, could it be claimed with any show of reason that the duty of the police officers to break up

street fights and brawls is not a public duty, and that for the non-performance or neglect thereof the municipality would be liable to any one for a private injury occasioned thereby? Clearly not, because it is such a duty as relates to the execution of a state law, and the officers charged therewith, though servants of the municipality, are, to the extent of such duty, public officers, and for the neglect to perform the same no municipal liability attaches. The same is equally true as to the duty of police officers in regard to nuisances. The Municipal Court of Wilmington is therefore a public instrumentality constituted by the Legislature for the trial and punishment of such criminals disorders as are enumerated in the section and article of the Constitution before referred to, and the duties of the municipal officers selected to execute its process in respect to such offenses are also stamped with the same character.

Thus far we have treated the contention of the learned counsel for the defendant in error that no ordinance was ever passed against the practice of coasting, as set forth in the declaration, as being true. Is it true in fact? By Section 31 of the city charter the authority is given to the legislative body of the city generally to prescribe and regulate the use of the highways, streets, squares, lanes and alleys of the city, and to have and exercise control over the same, subject to the charter limitations and to the general supervision and control of the General Assembly. This power is sufficiently broad to cover nuisances occurring within the limits of any of the streets of the city that involved the idea of obstruction. Doubtless the nuisance complained of had the effect to obstruct said Seventh street, and thereby obstructed the public in the exercise or enjoyment of a public right and therefore clearly came within the power to prescribe and regulate the use of streets. That being so, if there was an ordinance prohibiting such an obstruction at the time of the accident set forth in the declaration, it clearly absolved the city from any liability on the score of not having declared such an obstruction to be a nuisance and punishing the same by the imposition of a penalty. Upon examination we find that in pursuance

of such authority an ordinance was passed many years ago, Section 3, of which is as follows : " If any person shall place, or leave in any street, or public lane, or alley, of this city a wagon, cart, gig, sleigh or other carriage without a horse or beast used for drawing the same attached thereto, or shall without lawful permission obstruct any open and public street, lane or alley of this city, every person so offending shall forfeit and pay a fine of two dollars." City Code, page 472. It cannot be pretended that those persons engaged in the sport of coasting at the time mentioned in the declaration or any time previously thereto, could not have been arrested, tried, convicted and punished for a violation of said ordinance, so that the contention of the counsel of the defendant in error in this regard is not true in fact. Therefore in any view of the case the only neglect of duty was the failure of the city constables to abate or suppress the nuisance complained of in the declaration, which, as we have already shown, involves no municipal liability. The Court is, therefore, of the opinion that the judgment of the Court below should be reversed.